FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 13, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BANI MORENO,

    Defendant - Appellant.

No. 25-6136
(D.C. No. 5:12-CR-00297-R-13)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

Defendant Bani Moreno, appearing pro se, appeals from the district court's order denying his petition for writ of error *coram nobis*.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

In June 2013, Mr. Moreno was convicted by a jury of one count of conspiracy to possess methamphetamine with intent to distribute, two counts of using a

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

communication device to facilitate a drug transaction, one count of distribution of methamphetamine, and one count of possession of methamphetamine with intent to distribute. *United States v. Moreno*, 607 F. App'x 775, 777 (10th Cir. 2015). Mr. Moreno was sentenced to 151 months in prison, plus a five-year term of supervised release. *Id.*

We affirmed Mr. Moreno's convictions on direct appeal. Mr. Moreno thereafter filed four habeas petitions, multiple motions for documents related to his trial, and an unopposed motion to reduce his sentence. In February 2019, the district court reduced Mr. Moreno's term of imprisonment to 131 months.

Mr. Moreno completed his term of imprisonment in September 2022 and began his term of supervised release. He has since been deported from the United States.

In June 2025, Mr. Moreno filed a pro se petition for writ of error *coram nobis*. Relying on an August 2022 affidavit from a man named Alfredo Resendiz-Avila who testified against Mr. Moreno at trial, the petition asked the district court to vacate Mr. Moreno's convictions on three grounds: (1) that "[n]ewly discovered evidence establish[ed] that [a] critical government witness . . . testified falsely under coercion and inducements"; (2) "Brady and Giglio violations resulting from the government's suppression of exculpatory and impeachment material"; and (3) "[o]ngoing collateral consequences including supervised release (until 2027) and permanent deportation." R. Vol. 1 at 176. Mr. Moreno argued in support that the government "threatened a witness with a more severe punishment if the witness did not cooperate," "withheld the plea supplements of other testifying witnesses that would have memorialized

2

similar treatment," and also withheld "lab reports that would have separated [him] from the subject methamphetamine." *Id.* at 258.

After directing the United States to respond to Mr. Moreno's petition, the district court issued an order denying Mr. Moreno's petition. The district court concluded that Mr. Moreno failed to exercise due diligence because "at a minimum, he possessed the Affidavit [from Mr. Resendiz-Avila] for over two years before bringing it to the Court's attention." R. Vol. 1 at 260. The district court also concluded that "even if [Mr. Moreno] had diligently pursued his Giglio and Brady claims, he still fail[ed] to demonstrate that the trial error—if any—was fundamental in nature." *Id.* The district court noted in support that (a) Mr. Resendiz-Avila "was just one of a number of witnesses" who testified against Mr. Moreno and Mr. Moreno "present[ed] no evidence that these additional witnesses were coerced or enticed into cooperating," (b) "[t]he purported plea supplements do not exist," and (c) Mr. Moreno "fail[ed] to demonstrate that the lab reports were not turned over in discovery." *Id.* at 261-62. The district court concluded that "[a]t bottom, nothing [Mr. Moreno] has presented changes the Tenth Circuit's observation over a decade ago that the evidence of his guilt is 'overwhelming.'" *Id.* at 262 (quoting *Moreno*, 607 F. App'x at 778). Thus, the district court concluded that "any error did not result in a fundamental miscarriage of justice." *Id.*

The district court also, in light of Mr. Moreno's history of filing "frivolous" pleadings, "barred" Mr. Moreno "from further filings related to his 2013 convictions in the United States District Court for the Western District of Oklahoma unless he is

3

either represented by a licensed attorney or first obtains permission to proceed *pro se*." *Id.* at 262-63. The district court detailed the steps Mr. Moreno would need to take to obtain such approval.

Mr. Moreno now appeals.

## II. DISCUSSION

"We review a district court's denial of a petition for a writ of *coram nobis* for abuse of discretion, mindful that a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *United States v. Salgueido*, — F.4th —, 2026 WL 2221619, at *1 (10th Cir. Aug. 3, 2026) (brackets, citations, and internal quotations omitted).

We have identified three requirements for the issuance of a writ of *coram nobis*. *Id.* at *3. First, "the petitioner cannot obtain or could not have obtained relief through other remedies." *Id.* This means "that 'a petition for writ of [*coram nobis*] must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence.'" *Id.* at *4 (quoting *United States v. Miles*, 923 F.3d 798, 804 (10th Cir. 2019)). Second, "absent relief, the petitioner will suffer extraordinary injury—a miscarriage of justice." *Id.* at *3. This means that "[t]he error must be obvious—not one a judge could reasonably make," and "'it must be of the type that would undermine public confidence in the judiciary' and 'discredit the judiciary's commitment to the law.'" *Id.* at *4 (quoting *Hunter v. United States*, — U.S. —, 146

4

S. Ct. 1702, 1713 (2026)).  "The point of the miscarriage-of-justice limit . . . is to offer a safety valve for extreme cases—a way out of a waiver [of an issue] when the justice system's basic integrity is at stake."  *Id.* (quoting *Hunter*, 146 S. Ct. at 1713-14).  Third, "the petitioner has acted diligently to obtain coram nobis relief, as befitting the magnitude of the injury and the importance of finality."  *Id.* at *3.

The district court concluded that Mr. Moreno failed to satisfy the second and third of these requirements.[1]  Although Mr. Moreno challenges the district court's conclusions, our review of the record persuades us the district court did not abuse its discretion.

Mr. Moreno argues that the district court "applied an overly rigid and formalistic view of 'diligence' that is unsupported by law and ignores the practical realities of [his] situation as a *pro se* deportee diligently pursuing multiple avenues of relief."  Aplt. Br. at 7-8.  We disagree.  Although Mr. Moreno now offers various reasons for why he waited two years to file his petition (including "[c]ontinuing his active FOIA litigation in the District of Columbia," *id.* at 9), we are not persuaded that any of those reasons are sufficient to undermine the district court's conclusion that he failed to act diligently in this matter.  *See United States v. Gaddis*, 200 F. App'x 817, 818-19 (10th Cir. 2006) (affirming district court's conclusion that petitioner who "wait[ed] almost two years after his release from prison to file the motion" failed to act diligently).  He also argues that his filing of numerous post-

---

[1] The district court did not address the first requirement, nor do we.

5

conviction motions demonstrates an "ongoing, multi-front effort to uncover the truth." Aplt. Br. at 10. But Mr. Moreno fails to show that his prior post-conviction motions had any connection to the claim asserted in his petition for writ of *coram nobis*. And, in any event, the filing of those prior motions does not to explain why he waited two years after obtaining the affidavit from Mr. Resendiz-Avila before filing his petition.[2]

Mr. Moreno also challenges the district court's conclusion that he failed to satisfy the "miscarriage of justice" requirement. He argues that "[u]nder *Brady* and *Giglio*, the suppressed evidence is material if there is a 'reasonable probability' that its timely disclosure would have altered the verdict." *Id.* at 11 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). Thus, he argues, all he had to do was "to demonstrate that the government's suppression of evidence rendered the verdict unreliable." *Id.* He argues that the district court instead "applied a legally erroneous standard that immunizes constitutional violations from review whenever inculpatory evidence existed." *Id.*

We disagree and conclude the district court did not abuse its discretion in assessing the "miscarriage of justice" requirement. Rather than stating that Mr. Moreno failed to satisfy this requirement because "other inculpatory evidence existed" (as suggested by Mr. Moreno), the district court instead concluded that, even

---

[2] According to the government, documents from a case filed by Mr. Moreno in federal district court in Ohio indicate he "knew of the substance of th[e] affidavit for almost a decade prior to obtaining it." Aplee. Br. at 19.

assuming the allegations in Mr. Resendiz-Avila's affidavit were true, the other evidence presented at Mr. Moreno's trial was so substantial that there was no miscarriage of justice. Nothing in the record in this case persuades us that the district court's conclusion was erroneous.[3]

Mr. Moreno also argues that the district court abused its discretion and violated his due process rights by denying him leave to file a reply brief in support of his petition. We reject that argument. "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). "The filing of a reply brief is neither required by the Constitution nor essential for appellate review." *Malizzio v. United States*, 46 F.3d 1133, 1995 WL 42339, at *5 (7th Cir. Jan. 26, 1995) (table). Consistent with these principles, the district court's local rules expressly state that "[r]eply briefs are optional and not

---

[3] Mr. Moreno argues that the district court clearly erred in finding that "purported plea supplements" from other government witnesses "do not exist." R. Vol. 1 at 262; *see* Aplt. Br. at 13. He argues that "statements by the Clerk of Court and the government's own filings in parallel FOIA litigation . . . shows that plea supplements for the cooperating witnesses not only exist, but remain withheld under seal." Aplt. Br. at 13. Nothing in the record substantiates Mr. Moreno's arguments. And, in fact, we note that the local criminal rule requiring the filing of plea supplements went into effect after Mr. Moreno's trial. *See* R. Vol. 1 at 256.

In any event, the district court found that "[e]ach of the witnesses [Mr. Moreno] names in his Petition entered into plea agreements that were (1) publicly available on the record; (2) explicitly acknowledged cooperation with the government; and (3) were publicly available before [his] trial." R. Vol. 1 at 262 n.4. The district court also found that "all three [witnesses] were impeached based on their plea agreement during the trial, albeit by co-defendant counsel." *Id.* Mr. Moreno does not mention, let alone dispute, these findings.

7

encouraged." W.D. Okla. LCvR 7.1(h); *see also* W.D. Okla. LCrR 12.1(c) ("Reply briefs are permitted only with leave of court . . . .").

Finally, Mr. Moreno argues that the district court abused its discretion and violated his right of access to the courts by imposing filing restrictions on him. We disagree. "[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989) (citation omitted). Here, the record supports the district court's conclusion that Mr. Moreno's litigation history, which includes filing four habeas petitions and numerous other post-convictions motions all aimed at challenging his 2013 convictions, establishes a sufficiently abusive pattern to merit filing restrictions. Further, the restrictions imposed by the district court are sufficiently tailored and are not excessively burdensome because they allow Mr. Moreno to file future actions challenging his 2013 convictions by either (a) being represented by a licensed attorney, or (b) obtaining permission from the court to proceed pro se. Thus, we conclude the district court did not abuse its discretion. *See Tripati*, 878 F.2d at 354 (district court's imposition of filing restrictions is reviewed for abuse of discretion).

## III.  **CONCLUSION**

We grant Mr. Moreno's motion to proceed in forma pauperis on appeal.  We affirm the judgment of the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge